UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATSY CHAMBERS,　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）　　No. 1:11 CV 3528
　　　　v.　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
NORTH AMERICAN COMPANY　　　　　　 ）
FOR LIFE AND HEALTH　　　　　　　　）
INSURANCE　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Defendant,　　　　　　　）
　　　　　　　　　　　　　　　　　　）

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Patsy Chambers has filed a three-count putative class action against Defendant North American Company for Life and Health Insurance ("NACOLAH"). On June 30, 2011, NACOLAH filed the present Motion to Transfer Case to the Southern District of Iowa. For the reasons discussed below, we grant the motion.

I.　　BACKGROUND

Plaintiff Patsy Chambers ("Plaintiff") is a resident of Iowa. (Compl. ¶ 14.) She is suing NACOLAH on behalf of herself "and all purchasers of indexed annuities from [NACOLAH] nationwide."[1] (*Id*. at 1.) NACOLAH was an Illinois corporation from May 13, 1886 until September 27, 2007, when it redomesticated to Iowa. (*Id*. ¶ 15.) NACOLAH is member of the

---

[1] Plaintiff is suing on behalf of herself, a nationwide class, and a senior subclass. The nationwide class is defined as: "All persons in the United States who have purchased an indexed annuity product from NACOLAH Life Insurance Company from 2002 to the present" and the senior subclass is defined the same way except that the subclass consists of persons "who were 60 or older when the annuity was issued." (Compl. ¶ 89.)

Sammons Financial Group, Inc. ("SFG"), whose member companies provide investment services. (*Id*.)

At issue in this case is NACOLAH's sale and marketing of indexed annuities. (*Id*. ¶ 1.) As the complaint sets out, an indexed annuity is a deferred annuity that "permits the policyholder to allocate premium to a fixed account . . . and/or to one or more 'indexed accounts.'" (*Id*. ¶¶ 1, 20.) In essence, indexed annuities are "retirement savings and spending financial vehicles." (*Id*. ¶ 1.) Plaintiff alleges that NACOLAH induces customers to buy its indexed annuity plans without disclosing that sales commissions for NACOLAH's agents are paid from customers' assets. (*Id*. ¶¶ 99–100.) According to Plaintiff, "the first thing that happens when [policyholders] purchase NACOLAH's asset accumulation vehicle is that their assets are reduced by 10% to 15% or more." (*Id*. ¶ 3.) In addition, Plaintiff asserts, NACOLAH induces customers by claiming to pay them a premium bonus percentage, but in reality, customers pay for the so-called bonus themselves. (*Id*. ¶¶ 4–5.) Plaintiff contends that NACOLAH's scheme "targets the elderly . . . [but] injures everyone who purchases an indexed annuity." (*Id*. ¶ 2.)

Based on these allegations, the complaint enumerates three causes of action. The first cause of action alleges violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962©. Plaintiff accuses NACOLAH of "unlawfully selling indexed products to the general public." (Compl. ¶ 99.) According to the complaint, the RICO "enterprises," consisting of NACOLAH and its licensed agents, engaged in a "pattern of racketeering activity," including mail and wire fraud. (*Id*. ¶¶ 97, 107.) Plaintiff asserts that NACOLAH intentionally designed and sold indexed annuities that did not have the benefits NACOLAH advertised. (*Id*. ¶ 107.) As a result, NACOLAH profited from this "scheme" by

receiving payments from Plaintiff and class members via hidden premiums and other charges. (*Id.*)

The second cause of action is for breach of Plaintiff's annuity contract with NACOLAH. Plaintiff contends that NACOLAH's contracts offend consumer protection statutes and do not provide the minimum benefits they say they provide. (*Id.* ¶ 7.) Specifically, Plaintiff explains, NACOLAH's contracts "do not guarantee the minimum nonforfeiture values . . . required by the prospective test of the SNFLIDA [Standard Nonforfeiture Law for Individual Deferred Annuities] for optional maturity date contracts issued to those ages sixty and older." (*Id.* ¶ 122.) Finally, Count Three alleges that NACOLAH has been and continues to be unjustly enriched because of its "unlawful and/or wrongful collection of . . . premiums, penalties and surrender charges for its indexed annuity products." (*Id.* ¶ 128.)

## II. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil matter to another district where venue is proper. A court may transfer a case if a moving party shows that: (1) venue is proper in the district where the action was originally filed; (2) venue would be proper in the transferee court; and (3) the transfer will serve the convenience of the parties and witnesses as well as the interests of justice. *See Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1044 (N.D. Ill. 2007).

The parties do not dispute that venue is proper in either the Northern District of Illinois or the Southern District of Iowa. (Compl. ¶ 4; Mem. at 6, n.4.) In determining where a defendant resides for venue purposes, 28 U.S.C. § 1391© provides that "a defendant that is a

corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." The sole defendant here is a corporation that was subject to personal jurisdiction in both the Northern District of Illinois and the Southern District of Iowa at the time this case was brought. In addition, both courts have subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under federal law, RICO, 18 U.S.C. §§ 1961–1968. Neither party disputes these points.

The main concern here, then, is whether transfer to the Southern District of Iowa will serve the convenience of the parties and witnesses and the interests of justice. As the Seventh Circuit has recognized, deciding whether to transfer a case requires "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). The district court determines the weight given to each factor and has wide discretion in deciding whether transfer is appropriate. *Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The plaintiff's choice of forum is usually favored "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). As the party seeking transfer, NACOLAH has the burden to show that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (internal citations omitted).

In deciding whether transfer would promote convenience, courts consider such factors as "the availability of and access to witnesses, [] each party's access to and distance from resources in each forum[,] . . . the location of material events and the relative ease of access to sources of

proof." *Research Automation*, 626 F.3d at 978 (internal citations omitted).  Relevant interest of justice factors under the transfer statute include: "docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the relationship of each community to the controversy[.]"  *Id*.  With these principles in mind, we turn to the present motion.

**A.     Plaintiff's Choice of Forum**

A plaintiff's choice of forum is generally given great deference.  *Vandeveld,* 877 F. Supp. at 1167.  In this case, however, because Plaintiff represents a putative class and opted to litigate outside of her home forum, we afford Plaintiff's choice of forum little weight.  Plaintiff's choice deserves less weight than it otherwise would for three reasons: the chosen forum is not Plaintiff's home forum, Plaintiff represents a class, and the conduct giving rise to the cause of action did not conclusively occur in Plaintiff's chosen forum.

First, courts in this district have frequently held that a plaintiff's choice of forum deserves less weight when the chosen forum is not the plaintiff's home forum.  *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 831 (N.D. Ill. 1999); *Nero v. American Family Mut. Ins. Co.*, No. 11 C 1072, 2011 WL 2938138, at *2 (N.D. Ill. July 19, 2011).  Here, Plaintiff's home forum is the Southern District of Iowa, yet she has chosen to bring this case in the Northern District of Illinois.  (Compl. ¶ 14.)

Second, courts in this district have repeatedly afforded a plaintiff's choice of forum less weight where the plaintiff represents a class.  *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 482–83 (N.D. Ill. 1987)*; Nero,* 2011 WL 2938138, at *2; *Simonoff v. Kaplan,* No. 09 C

5017, 2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010). Plaintiff purports to represent a class including herself and "and all purchasers of indexed annuities from [NACOLAH] nationwide." (Compl. at 1.) Because Plaintiff brings this suit as a national class action, we afford her choice of forum little weight, but do not disregard it entirely. *Simonoff,* 2010 WL 1195855, at *1 (collecting cases).

Third, a plaintiff's choice of forum deserves less weight when "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum." *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (quoting *Robinson v. Town of Madison*, 752 F. Supp. 842, 847 (N.D. Ill. 1990) (citations omitted)). In this case, the parties disagree about where the material events occurred. (Compl. ¶ 13; Mem. at 7; Pl.'s Opp'n. at 1.) In light of this factual dispute, we cannot say that the cause of action conclusively arose in Plaintiff's selected forum. This uncertainty is another reason to discount Plaintiff's choice of forum. *Countryman*, 681 F. Supp. at 483; *Eugene v. McDonald's Corp.,* No. 96 C 1469, 1996 WL 411444, at *2 (N.D. Ill. July 18, 1996) (discounting plaintiff's choice of forum where it was uncertain "whether events underlying the cause of action primarily occurred in Illinois or Florida").

## B. Convenience of Parties and Witnesses

Having considered Plaintiff's choice of forum, we now consider the convenience of the parties and witnesses.

### *I. Availability and access to witnesses*

The convenience of witnesses is "often viewed as the most important factor in the transfer analysis." *Preussag Int'l Steel Corp. v. Ideal Steel & Builder's Supplies, Inc.,* No. 03 C

6643, 2004 WL 783102, at *5 (N.D. Ill. Jan. 21, 2004) (citing *Tingstol Co. v. Rainbow Sales Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998)). A party moving for transfer must show that the original forum is "clearly less convenient for its witnesses." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006). In weighing this factor, courts should assess the location of potential witnesses, the nature of their expected testimony, and whether certain witnesses may be compelled to testify. *Eugene*, 1996 WL 411444, at *2. For the court to make such assessments, the party seeking transfer should name potential key witnesses and provide a general statement of the witnesses' testimony. *Vandeveld*, 877 F. Supp. at 1167–68 (citing *Heller Fin., Inc.*, 883 F.2d at 1293); *JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC*, No. 10 C 7781, 2011 WL 2518938, at *10 (N.D. Ill. June 23, 2011).

As for NACOLAH employees, NACOLAH states that "most, if not all, of the key company witnesses who might be called to testify in this matter live and work in or near West Des Moines, Iowa." (Mem. at 4.) While NACOLAH has not identified specific employees it plans to call, it has indicated that it has 370 personnel in West Des Moines "with knowledge of the design, development, performance, and marketing of the annuity products at issue." (*Id.* at 9.) NACOLAH's assertion that most of the witnesses it intends to call live in or near West Des Moines is reliable and consistent with its undisputed redomestication to Iowa in 2007. Any of these corporate witnesses would find it clearly less convenient to testify in Chicago.

Moreover, NACOLAH identified Randy Knutson, the insurance broker who sold Plaintiff her annuity, as a witness. (*See* Pl.'s Opp'n at 13; Mem. at 9.) In addition to Plaintiff herself, Knutson resides in Iowa. Because Knutson appears to be a third-party witness, his convenience is of greater concern and supports transfer. (*See* Pl.'s Opp'n at 13; Mem. at 9.)

7

"More weight is afforded non-party witnesses than witnesses within the control of the parties, as it is assumed that party-witnesses will appear voluntarily." *See Pollock v. Boss Indus., Inc.*, No. 05 C 4978, 2006 WL 488687, at *3 (N.D. Ill. Feb. 24, 2006) (citing *Am. Family Ins. ex rel. Suddarth v. Wal-mart Stores, Inc.*, No. 02 C 8017, 2003 WL 1895390, at *1 (N.D. Ill. Apr. 17, 2003)). In sum, we conclude that this factor favors transfer to Iowa in light of the pertinent witnesses residing there.

### ii.     *Each Party's Access to and Distance from Resources in Each Forum*

We now consider the convenience of the parties. NACOLAH must show that "the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009). As Plaintiff resides in Iowa, that forum is plainly convenient for her and she has not argued otherwise. Members of the nationwide class that Plaintiff purports to represent reside in all 49 states where NACOLAH does business. (Compl. ¶ 14; Mem. at 2.) Accordingly, Illinois or Iowa would likely be equally convenient (or burdensome) for the putative class members. *Simonoff*, 2010 WL 1195855, at *2 (noting that in a nationwide class action, if a particular forum is inconvenient for the named plaintiff, another plaintiff can substitute). NACOLAH, for its part, convincingly asserts that Illinois is inconvenient because its key witnesses, company documents, and data related to its annuity business are all in Iowa. (Mem. at 8.) As such, we find that this factor weighs in favor of transfer.

### iii.     *Location of Material Events*

In assessing the material events for purposes of a motion to transfer, we focus on

NACOLAH's conduct. The crux of Plaintiff's complaint is that NACOLAH used illegal and fraudulent business and marketing practices to induce customers to purchase indexed annuities. Although the parties do not cite authority for the situs of material events in a RICO case, we look to the conduct that gave rise to the alleged RICO violations to determine the situs. *Ritchie Capital v. Jeffries*, No. 09 CV 07228, 2010 WL 768877, at *4 (N.D. Ill. Mar. 4, 2010); *see, e.g.*, *U.S. v. Burke*, 607 F. Supp. 2d 1314, 1321 (M.D. Fla. 2009) (in deciding a transfer motion in a RICO case, court looked to the "site of the principal exertions of the charged enterprise"). Similarly, the situs for Plaintiff's breach of contract claim is where the business decisions that caused the breach occurred. *First Nat'l Bank v. El Camino Res. Ltd.,* 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) (citations omitted).

In this case, the parties dispute the situs of material events. (Pl.'s Opp'n at 1 ("The 'material events' in this case occurred in Chicago, Illinois); Mem. at 7 ("all of the relevant events allegedly occurred in Iowa").) In deciding a motion to transfer, we "must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant." *Bankers Life & Cas. Co. v. Case*, No. 05 C 6532, 2005 WL 3542523, at *1 (N.D. Ill. Dec. 23, 2005) (quoting *Andrade v. Chase Home Fin., LLC*, No. 4 C 8229, 2005 WL 3436400, at *6 (N.D. Ill. Dec. 12, 2005)). Here, evidence in the record contradicts the facts in Plaintiff's complaint.

In contrast to Plaintiff's allegation that the material events occurred in Illinois, NACOLAH maintains that Iowa is the location of material events because its annuity operations have been based in Iowa since 2001. (Mem. at 1.) To rebut this, Plaintiff provided a sworn statement from Steven Horvat, NACOLAH's General Counsel and the Senior Vice President,

9

General Counsel, and Secretary of SFG.  (Pl.'s Opp'n at 2, Ex. 8.)  In a separate litigation, Mr. Horvat stated in September 2008: "NACOLAH's home office, president, the majority of its directors and officers, outside directors and chief marketing officer are all located in Illinois [and] the bulk of NACOLAH's marketing operations, actuarial functions related to product development and pricing and reinsurance, and employees are located in Illinois."  (Pl.'s Opp'n at 2, Ex. 8 ¶ 4.)  Mr. Horvat then issued a new statement in this case explaining that his previous statement referred to NACOLAH generally, not just the annuity business.  (*Id.* ¶ 6).  Further, he explained, although many NACOLAH executives were previously based in Chicago, those executives "were not involved in the details of decisions about matters such as the length of surrender charge periods, the use of fixed maturity dates, or the content of marketing brochures."  (*Id.* ¶ 5.)

Nevertheless, Plaintiff argues that Mr. Horvat's current statement should not be believed because his original statements were made in the context of "litigation arising out of the sale of virtually identical annuities to those at issue here."  (Pl.'s Surreply at 2.)  In the litigation Plaintiff refers to, SFG, NACOLAH, and another SFG member company sought coverage from an insurer for lawsuits arising from "allegations that Defendants [including NACOLAH] were involved in the improper marketing of long-term annuities to senior citizens."  *Fed. Ins. Co. v. Sammons Fin. Group, Inc.,* 595 F. Supp. 2d 962, 968 (S.D. Iowa 2009).  Plaintiff is right that the underlying NACOLAH class action in that case likely arose out of the same business practices at issue here.  However, in *Federal Insurance*, the defendants argued for transfer from Iowa to California because of proximity to ongoing class action litigation in California and Hawaii.  595 F. Supp. 2d at 985.  In short, the transfer issue in *Federal Insurance* did not center on the

location of NACOLAH's indexed annuity business. Indeed, Mr. Horvat's statements in September 2008 never directly refer to NACOLAH's indexed annuity business. We cannot conclude, then, that Mr. Horvat was without question speaking about the "very type of annuities at issue in this case." (Pl.'s Opp'n at 2.)

Plaintiff does not properly rebut NACOLAH's statement that its annuity business has been in Iowa since 2001. Contrary to Plaintiff's assertion, NACOLAH's contradictory statements about its principal place of business do not weigh for or against transfer. *See J & L Mgmt. Corp. of Ohio v. Arcelormittal Wierton, Inc.*, No. 08 C 4749, 2008 WL 5082980, at *4 (N.D. Ill. Nov. 25, 2008). Moreover, NACOLAH points to documentary evidence of Plaintiff's annuity application and annual statement, both of which list NACOLAH's address as Des Moines, Iowa. (Mem. at 3, Ex. 2 ¶¶ 9, 11, Ex. D.) Because Plaintiff does not point to any material events that occurred in Illinois and relies only on a single inconclusive statement from Mr. Horvat, we find that this factor weighs in favor of transfer.

### iv. *Access to Sources of Proof*

This factor concerns access to evidence. NACOLAH asserts that it "maintains the vast majority of its large volume of annuity-related business records (both hard copy and electronic) in or near West Des Moines, Iowa." (Mem. at 4.) As an initial matter, "[u]nilateral assertions that a majority of documentary evidence is within a separate district will not normally be dispositive of transfer to that district." *Landis v. Warner Chilcott (US), LLC*, No. 10 CV 5283, 2010 WL 5373664, at *3 (N.D. Ill. Dec. 15, 2010) (citations omitted). NACOLAH fails to demonstrate that these documents, even if voluminous, "would be inordinately difficult to transport." *Simonoff,* 2010 WL 1195855, at *2. Therefore, this factor is neutral because

11

"documents and records are easily transportable . . . and their location is not a persuasive reason for transfer." *Id*. (citing *Morton Grove Pharm.*, 525 F. Supp. 2d at 1045–46).

**C.     Interest of Justice**

Turning to the interest of justice factors, our analysis concentrates on "the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221. We consider the "court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *First Nat'l Bank*, 447 F. Supp. 2d at 912 (citations omitted).

*I.     Familiarity with Applicable Law*

Each court's relative familiarity with the law in this case does not weigh for or against transfer. First, Plaintiff's RICO claim involves a federal question. Therefore, "both districts are equally competent to hear and decide the issues of federal law." *Dean Foods Co.*, 2000 WL 1557915, at *5. Second, as to Plaintiff's breach of contract and unjust enrichment claims, "[g]enerally, contract law is not particularly complex." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000) (finding New York could apply Illinois contract law). For these reasons, we find this factor to be neutral.

*ii.     Speedy Case Resolution*

According to recent Federal Court Management Statistics for both courts, available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx, in 2010, the median times from filing to trial in civil cases were 26.1 months in Illinois and 23.8 months in Iowa. Civil cases reach disposition in Illinois in 6.2 months compared to 10.8 months in Iowa. On the

12

whole, these statistics show that docket congestion in the two forums is not materially different. We find this factor to be primarily neutral.

### iii. Relationship of Communities to Litigation and Desirability of Resolving Case in Each Locale

"Resolving litigated controversies in their locale is a desirable goal of federal courts." *First Nat'l Bank*, 447 F. Supp. 2d at 914. The parties dispute whether Iowa or Illinois has a greater interest in this case. (Mem. at 10 ("Iowa . . . has the greater interest in this litigation."); Pl.'s Opp'n at 15 ("Illinois has an interest in policing those who locate here and perpetrate alleged fraudulent schemes from Illinois").) NACOLAH argues that Iowa has a greater interest in protecting it citizens, like Plaintiff, and seeing that corporations that "call [Iowa] home are justly tried." (Mem. at 10 (citing *Simonoff*, 2010 WL 1195855, at *3).) Of course, NACOLAH has and continues to operate in both Iowa and Illinois. (Compl. ¶ 15.) NACOLAH agents also sell its products in 49 states. (Mem. at 2, n.1.) Moreover, because Plaintiff brings this suit as a national class action, an injunction or other remedy would affect plaintiffs across the country, not just in Iowa or Illinois. As a result, "there is no compelling community interest that would be preserved by the selection of one venue over another." *Jaramillo v. DineEquity, Inc.,* 644 F. Supp. 2d 908, 917 (N.D. Ill. 2009) (finding the relationship of the communities factor to be neutral in a national class action). All in all, we find that this factor—while not dispositive in light of the class claims—slightly favors transfer.

### D. Summary of Balance

After consideration of all of the relevant factors, we hold that the balance warrants transfer of this case to the Southern District of Iowa. While the interest of justice factors are predominantly neutral, the situs of material events and convenience of witnesses strongly favor

transfer. The parties' relative access to resources also supports transfer. All in all, the convenience factors collectively and resoundingly outweigh Plaintiff's choice of forum.

## III. CONCLUSION

For the reasons stated above, we grant NACOLAH's motion to transfer venue to the Southern District of Iowa. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: November 18, 2011